No. 83.—John S. Stephens *et al.*, plaintiffs in error, *vs.* George W. Crawford, Governor of the State of Georgia, use of Thomas B. Ward, defendant in error.

In an action upon a sheriff's bond, to charge his sureties, the admissions of the sheriff are *prima facie* evidence against them, unless fraudulently made, or made by mistake, or having relation to money, the paying over of which is not guarantied by the bond.

A certified copy of the record of the action of the Inferior Court in taking a sheriff's bond, made in vacation, is not evidence in a suit against the sureties; because, as to that, the action is ministerial and not judicial.

A bond voluntarily tendered by a sheriff, in office, and accepted, more than thirty days after his election, is bad as a statutory bond, but good at common law.

An official bond, required by statute, but which is not in conformity with its provisions, is good, so far as it does conform, unless the statute expressly provides that bonds not made in conformity with it shall be void.

A bond made to the governor, for the time being, and his successors in office, is considered as made to the office, and passes to each incumbent, without assignment, by succession.

This court will not send a cause back for a re-hearing because of the admission of illegal testimony, if, wholly irrespective of that testimony, there was, plainly and obviously, testimony sufficient to justify the finding.

This was an action of debt upon a sheriff's bond, tried before Judge Merriwether, in the Superior Court of the county of Baldwin, at August Term, 1846.

Upon the trial, a copy of a bond, duly certified by the proper officer, purporting to be a sheriff's bond, executed by John S. Stephens, John M. Maclin, Benjamin L. Lester, and Michael J. Kenan, the plaintiffs in error, was offered in evidence, in behalf of the defendant in error, who was plaintiff below. The bond bore date the 3d day of March, 1840, and recited, that the said Stephens was elected sheriff of the said county of Baldwin on the sixth day of January, in the year aforesaid. It was made payable to the then Governor of Georgia, and his successors in office, and for the amount required by law, and in the usual form. The introduction of the copy-bond, aforesaid, in evidence was objected to on the part of the plaintiffs in error, on the ground that it appeared that the original was not executed within the time required by law for the execution of sheriffs' bonds after their election, and that the office of sheriff of Baldwin was vacant at the time of the execution of said bond, and therefore the same was not legal evidence to charge the securities of said Stephens for any act purporting to have been done by him as sheriff. The court below overruled the objection, and permitted said copy-bond to be read in evidence to the jury. To which decision of the court below the plaintiffs in error excepted. An execution for $320 00, principal, besides interest and costs, in favor of said Thomas Ward, (for whose use this suit was brought,) against one Henry F. Young, with the entry endorsed, "satisfied by John S. Stephens, sheriff," in the hand-writing of said Stephens, was admitted in evidence, in behalf of the defendant in error, without objection. It was then proposed to prove the

admission of said Stephens, in the fall of 1841, and during the time for which he was elected sheriff, that he had collected the money on said execution. This testimony was objected to on the part of the plaintiffs in error, on the ground that the admissions of said Stephens, the principal, could not be received in evidence to charge his securities. The court below overruled the objection, and admitted the testimony. To which the plaintiffs in error excepted.

On the part of the plaintiffs in error, it was then proven, by an exemplification of the records of the Inferior Court of said county, that said Stephens was duly qualified as sheriff elect of said county on the 11th day of January, 1840 ; and they offered in evidence a copy of a sheriff's bond, duly certified, purporting to have been executed by said Stephens, as principal, and Michael J. Kenan, Samuel T. Beecher, and John M. Maclin, as his securities, on the said 11th day of January, 1840 ; which was admitted. It was then further proved, in behalf of the plaintiffs in error, by a witness who was, at the time of the qualification of said Stephens as such sheriff, one of the justices of the Inferior Court, that the original of said last-mentioned copy-bond was executed at the time of its date, the 11th of January, 1840, three of the justices of said Inferior Court being present, in obedience to a *dedimus potestatem* issued by the then Governor; and that said bond was taken, and the oath of office was then administered to said Stephens, in obedience to, and by virtue of, the authority vested in them by said *dedimus potestatem.*

The counsel for the defendant in error, by way of rebuttal, then offered in evidence a paper purporting to be an exemplification of the records of said Inferior Court, reciting that the court, being under the impression that the bond given by said Stephens as sheriff might be somewhat informal, and as he had tendered an additional bond, (the bond sued on,) for the sum of twenty thousand dollars, with John M. Maclin, Benjamin L. Lester, and M. J. Kenan as securities, which was accepted; it was ordered, therefore, that the clerk should transmit it to the clerk of the Superior Court for record and file, together with the bond taken previously, to wit, the bond of 11th January, 1840 ; which acceptance of said bond, and the passing of said order, took place on the 3d day of March, 1840 ;—which was objected to on the part of the plaintiffs in error, on the ground that the said justices of the Inferior Court were not authorized to meet at that time for the purpose of taking said bond, and which was the bond sued on, and that said justices were not authorized to take the same, or make any record of their meeting or proceedings; that said paper, or exemplification, was mere hearsay evidence, and not competent for any purposes as against the plaintiffs in error. The court overruled the objection, and permitted said paper to go to the jury in evidence. To which decision the plaintiffs in error excepted.

The counsel for the defendant in error, by way of rebuttal, further proved, that the bond sued on was presented and tendered by the plaintiff in error, Stephens, to the Inferior Court, stating at the time that he offered it because there was some dissatisfaction with the first bond ; and it was thereupon accepted by the justices. Upon cross-examination of the witness, it was proved, that the meeting of the justices, when the bond sued on was taken, was not by virtue of any *dedimus potestatem*

directed to them from the then Governor, or by any authority from any of the departments of government, and that the said bond was not taken or received by virtue of any such authority.

The parties having closed their testimony, the plaintiffs in error moved the court that, upon the whole evidence in the case, as submitted to the jury, the bond sued on was invalid, and not sufficient in law to authorize a recovery against the plaintiffs in error; but the court decided that the said bond was valid, legal, and binding upon the plaintiffs in error, and so instructed the jury, and they found accordingly. To which decision, and instruction to the jury, the plaintiffs in error excepted.

Francis H. Cone, for the plaintiff in error, insisted that the bond set forth in the declaration of plaintiff below, is not good as a statutory bond.—*Prin.* 177-8, 183, 430; *Hotchkiss,* 507, 514.

It is not good as a bond, at common law.—5 *Com. Dig.* 219; 3 *Dev. Rep.* 86, 286.

1st. Because there was no delivery.—7 *Pick. Rep.* 91; 3 *Dev. Rep.* 86, 286; 2 *Harris and Johns.* 108; 2 *Porter's Rep.* 443; 1 *Tucker's Com.* 236–7; 4 *Kent,* 454; 6 *Peters' Rep.* 124.

2d. Because a voluntary bond canot be sued in the name of a successor.—1 *Dev.* 153; 1 *Leigh's Rep.* 485.

A copy of a voluntary bond is not evidence, unless the original is accounted for.

Iverson L. Harris, for defendant in error.

Two questions collateral to the chief question involved under the transcript, have been made by the learned counsel for plaintiff in error, to which I will first address myself.

1st. That there was no *dedimus potestatem* from the executive, authorizing the taking of the bond sued on, it being the second taken by the justices of the Inferior Court.

The authority to take sheriff's bonds is, by the act of 1803, (*Prin. Dig.* p. 176, and *Cobb,* p. 480,) vested in a majority of the justices of the Inferior Court.

The act of 1799 (*Prin. Dig.* p. 430) confers no authority upon the executive to do anything but commission that officer; and notwithstanding the bond is made payable to the Governor and his successors, it is never taken by the Governor, or delivered to him, or deposited of file in his office; but it is appointed to remain of file in clerk's office of the Superior Court, and is sueable not at his will, but only by the order of the judge of the Superior Court for the county; and this for the satisfaction of the public, or any person aggrieved by sheriff's or deputy-sheriff's misconduct.

The bond is emphatically payable to the office, for the security of the whole people.

A bond taken of a sheriff, who is an officer belonging to the judicial department, and over whom he has no control, would probably be void, for he has no authority by law to take such a bond, nor would the exercise of such authority fall within any of the principles so luminously stated by Justice Story, in Tingey's case in 5 *Peters.*

*A fortiori,* if the Governor has no authority in such matters, how can his *dedimus potestatem* confer a power which not only does not belong to his department, but which has been denied to it. It is mere waste paper. The law has conferred the right on others. It can be no objection, then, that the bond sued on was taken without executive authority.

The second question presented is, that forasmuch as the statutes (*Prin. Dig.* pp. 177, 178, and 183), require that a sheriff shall give bond, &c., within ten days after being commissioned by the Governor, and failing to do so, directing the Inferior Court to declare the office vacant, &c., the bond sued on is void, because

Stephens was commissioned on 8th January, 1810, and this bond not executed until the 3d of March, 1840. Three answers, and each deemed to be conclusive, may be given, viz:

1st. There can be no vacancy in the office until it *shall have been so declared* by those to whom the power of vacating it is intrusted.

2d. The securities are estopped, by the recitals in the bond, from denying that Stephens was sheriff *de facto et de jure*, at the time of its execution.

3d. The statute referred to, forms no portion of the contract of the securities; the condition of the bond has no reference to it whatever. Besides, all such statutes are merely directory to the agents of the government, and the omission of those agents to perform the duties required of them can form no defence for the securities.—*U. S.* vs. *Van Zandt*, 11 *Wheaton,* 184; *Dox, et al.* vs. *Postmaster Genl.* 1 *Peters,* 318; 3 *Mason,* 446.

The transcript exhibits the fact that the certified copy of the bond was objected to, on the ground that the *delivery* of the original had not been proved.

At common law, the possession of a bond by an obligee is *prima facie* evidence of it.—*Clark* vs. *Ray,* 1 *Harris and John.* 323; 1 *Harris and Gill,* 324.

Coming, however, as this duly certified copy does, from the legal depository of the original, after its acceptance, the law will presume the antecedent requisite. Our statute precludes any such objection, as there is no plea of *non est factum.* The failure to plead it is an admission of the entire execution of the bond.

The important question to be decided on this transcript is—Is the bond sued on good, either as an official or as a voluntary bond?

That it is good as an official bond, is supported by the case of the *Treasurer* vs. *Bates,* 2 *Bailey S. C. Repts.* 366; *Steven's case,* 2 *Nott and McCord,* 108.

In Bates' case, the bond was beyond the sum, by several thousand dollars, of the amount of penalty prescribed by statute.

Here, two bonds were taken, making an aggregate penalty of $40,000, or twenty thousand dollars more than prescribed by statute. The principle is unchanged by the number of bonds. The question is, Can a bond be sustained as an *official* bond, where a greater penalty is imposed than the statute prescribes?

Judge O'Neal, pronouncing the opinion of the whole Court of Appeals, says: "It is supposed that the bond, if not taken in exact conformity to the act, is void. But the act itself makes no such provision; and unless it does, the objection is unavailing. For, to render a bond taken under a statute void, it must be so according to express enactment, or must be intended to operate as a fraud on the obligors by color of the law, or as an evasion of the statute."

At common law, a consideration is not necessary to the validity of a bond.—7 *Term,* 447; *Page* vs. *Freeman,* 2 *Mass. R.* 159, 162; 2 *Johnson,* 177; 13 *Johns.* 430; *Plowden,* 308.

As a *voluntary bond,* it would be good at common law, unless for an immoral or an illegal consideration, or unless contrary to public policy.—*Sheppard Touchstone,* 2 vol. 207; 2 *Peere Wms.* 181; 4 *Petersdorf Abr.* 402.

In the U. S., the following cases recognize the validity of such a bond as this as a voluntary bond.—5 *Greenleaf,* 240; 2 *J. J. Marshal,* 473; *Hoy et al.* vs. *Rogers et al.* 4 *Monroe,* 225; *Cross* vs. *Gabeau and Hunt,* 1 *Bailey,* 211; *Governor* vs. *Ridlock,* 2 *Hawks,* 366; *Morse* vs. *Hodson,* 5 *Mass.* 314; *Commonwealth* vs. *Wolbert,* 6 *Binney,* 298; *Tingey's case,* 5 *Peters.*

The case of the *U. S.* vs. *Brown,* in *Gilpin,* p. 155, is an elaborate review, by Judge Hopkinson, of the cases arising upon bonds. The examination of the *U. S.* vs. *Morgan et al.* in 3 *Wash.* C. C., there made, places that case upon its true basis. It should no longer be cited as an authority against official bonds, not conforming to the statute, being absolutely void and incapable of being enforced as voluntary bonds.

The cases relied on by my learned adversary, (*U. S.* vs. *Gordon,* 7 *Cranch,* 287; *Governor* vs. *Twitty,* 1 *Devereux,* 153; *Branch* vs. *Elliott,* 3 *Dev.* 86; *Justices* vs. *Armstrong,* 3 *Dev.* 286,) recognize the broad principle I am now maintaining, that official bonds, when not conformable to statute requiring them, are

37

good at common law. The case of the *Commonwealth* vs. *Jackson*, 1 *Leigh*, 485, is not in conflict with any of the foregoing authorities. The bond was declared void in that case, because it was *against* public policy to allow an unauthorized person to require one.

As to the admission of Stephens to bind his securities—they being privies in law, his admissions are *prima facie* evidence to bind them.—*Treasurer* ·vs. *Bates*, 2 *Bailey*, 362 ; 4 *Randolph*, 317 ; *Preston's securities*, *Gilmer Rpts.*, 235 ; *Pendleton* vs. *Bank Kentucky*, 1 *Monroe Rep.* 177 ; *Judge Cone in case* vs. *Securities of Haynes*.

The verdict below should remain undisturbed. Lester, the plaintiff in error bringing up this case, can complain of no oppression on him ; the bond imposes on him *no increased* penalty ; he is a volunteer, a substitute for Beecher, a security on first bond. He signs and seals this obligation of his own free will ; it was not exacted or required ; it was not taken *colore officii*. The justices had nothing to do in its preparation ; it is all the act of the defendants, their paper, and ink, and form—no clerk of the court assisting or directing. He comes for relief in a most questionable shape.

The verdict below should be confirmed, because it is according to the justice of the case. This writ of error is virtually an application for a new trial. The principles regulating the granting such application, are well stated by Buller, Justice, in *Estwick* vs. *Caillland*, 5 *Term Repts.* 420.

" The only question," says he, " is, whether, under all the circumstances of the case, the verdict be or be not according to the justice of the case; for though the judge may have made some little slip in his directions to the jury, yet, if justice be done by the verdict, the court ought not to interfere to set it aside. If, indeed, the facts be doubtful, and the attention of the jury has been drawn from the consideration of them, that is a good ground for a new trial. But if the facts be clear, and those facts have been laid before the jury, we ought not to grant a new trial in order to give the unsuccessful party the chance of obtaining another verdict, if the former verdict be agreeable to the equity and conscience of the case."

*By the Court*—NISBET, Judge.

This is an action on a sheriff's bond, to charge the sureties for a default of their principal, and the first question made is, whether the admissions of the principal can be given in evidence to charge them ?

We think they are *prima facie* evidence of their liability, and cast the onus upon them.

This court has determined that a decree against a guardian upon a bill suggesting a *devastavit* to which they were not parties, is no more than *prima facie* evidence against the sureties—they can inquire into the grounds of the decree *ab origine*. With stronger reason the admission of a principal is only *prima facie* evidence. The sureties may show in rebuttal, that the admission was made by the sheriff by mistake—or collusion with third persons for the purpose of charging them—or any other fact which demonstrates that the money received by him was not guarantied to be paid over by them. Any other rule would be unjust to them.

It is, however, both reasonable and according to the settled practice of the courts, that his admission should go against them as *prima facie* proof of liability. They would be conclusive upon himself, if *bona fide* made, and will bind the sureties, because they are his privies in law. It is not to be presumed that one will charge himself falsely—the legal presumption is that they are true until the contrary appears. With these qualifi-

cations, we think, the testimony was properly admitted.—2 *Bailey*, 380, 381 ; 5 *Binney*, 184 ; 1 *Starkie*, 189, 223, 243 ; 3 *McCord*, 412.

The next exception which we notice is to the decision of the court below, admitting in evidence what purported to be a certified copy of the record of the action of the Inferior Court of Baldwin county, at the time they took the sheriff's bond sued upon tendered in evidence by the plaintiff in rebuttal. And here it becomes necessary to advert to the facts.

Stephens, the sheriff, was elected on January 6th, 1840—was commissioned on the 8th, and gave bond on the 11th, of the same month. Afterwards, to wit on the 3d of March, and after the expiration of 30 days from his election, he voluntarily appeared before three of the justices of the Inferior Court, and suggesting that the bond already given was supposed by some to be invalid, offered for their acceptance a second bond—the bond sued upon—which they accepted and delivered over to the clerk of the Superior Court. This was not done at either a regular or an adjourned term of that court. The record offered recites the action of the court, at that time, in taking this second bond.

The reasons urged against the admission of it are, that the time, to wit, 30 days, within which the law directs the sheriff to qualify having transpired, the justices, had no right to take the bond ; their action was a nullity, and therefore the paper tendered is no record, and not competent evidence to charge the defendants. We express now no opinion, as to the power of the court to take the bond, reserving that question for the present. We think upon other grounds the testimony was improperly admitted.

We doubt the power of the Inferior Court, in vacation, to make a record unless it is of a judicial act, which the law directs to be done in vacation, or which the court itself at a regular or adjourned term, by order appearing upon its minutes, may direct to be done in vacation.

Upon this subject the opinion of this court has been fully expressed elsewhere. The act of the Inferior Court now being considered, was not a judicial act.

By the judiciary act of 1799, the sheriff is required to give bond before any one of the judges of the Superior Court, to be approved by the justices of the Inferior Court, or any three of them.—*Prince*, 430.

By the act of 1803, every judge of the Superior Court, or a majority of the justices of the Inferior Court, are declared competent to take the bonds of sheriffs and to qualify them.—*Prince*, 176, 177. By this act they are appointed the agents of the State for this purpose. The duty devolved upon them is ministerial—it is required of them not as a court, but as individuals, designated by their official name, and presumed, because of the office they hold, to be discreet men. We refer now to the taking of the bond, and not to the administering of the official oath.

We do not perceive, therefore, that the act appertains to the business of the court, or belongs to its records. As ministerial agents, we are satisfied they have not the power in vacation to make a record ; and if they had, it will not be a record of the Inferior Court. Besides this testimony was supererogatory. The record was not necessary to show the execution of the bond, or before whom it was executed. At the time this record

was tendered, a certified copy of it was, in evidence, attested officially by three of the justices of the Inferior Court—bearing date on 3d March, and coming out from the Clerk's office of the Superior Court, its legal depository. And for this reason, although we think, that in the admission of this evidence the court erred, we will not on that account send the cause back for a re-hearing.

It is well settled that a new trial will not be awarded because illegal testimony was admitted, if, wholly irrespective of that testimony, there was plainly and obviously evidence sufficient to justify the finding.

A court for the correction of errors, we hold, has, in relation to this matter, as ample, if not greater, discretion than the Circuit Court has upon an application for a new trial.

It will, to use the language of the Supreme Court of New York, look beyond the letter of the error assigned, and inquire how far that error affected the judgment of the court, or the finding of the jury.—9 *Cowen*, 680. We have no doubt but that the discretion now claimed belongs to all corrective tribunals. It is expedient, as preventing delay and cost in the administration of justice, that this court should be clothed with such power. It has exercised that discretion already.—See *McCleskey Adm'rs* vs. *Washington Leadbetter*, tried at Gainesville, in September. We are not left to rest the power upon the practice of other courts ; for our own organic law confers it. It is therein enacted that, "upon the decision of the said Supreme Court, on matters of law, or principles of equity, which may arise in the bill of exceptions, the court shall cause to be certified to the court below such decision, and *award such order and direction in the premises, as may be consistent with the law and justice of the case,* which decision so rendered and ordered, and *direction so awarded, shall be respected and carried into full effect by the court below."*—See *Act to organize the Supreme Court,* sec. 5. By this clause the power is conferred to award such *order and direction* in the premises, as may be consistent with the law and *justice* of the case.

We have now arrived at the point where, as we suppose, all the other assignments of error may be summarily comprehended in two positions, taken in the argument by the counsel for the plaintiff in error. These positions are :

1st. That the bond upon which the plaintiff's action is founded, to wit, the second bond given by Stephens, the sheriff, and dated on the 3d of March, is not valid as a statutory bond ; and therefore the plaintiff is not entitled to recover.

2d. It is not valid as a voluntary or common-law bond, and therefore the plaintiff cannot recover.

We hold that the remaining points, no matter how originating or how stated, must necessarily be considered and adjudicated, in our discussion of, and opinion upon, these propositions.

Both of these positions were determined against the plaintiff in error in the court below.

1st. Is this a valid bond, under the statutes of Georgia ?

By the act of 1809, (*Prince*, 177,) it is made the duty of the sheriff elect to apply for his commission within twenty days from his election ; and to take the oath of office and give bond within ten days after being notified of the arrival of his commission, by the act of 1811, *Prince,*

178. By the act of 1823, (*Prince*, 183,) if he does not qualify and give bond within the time prescribed by the two before-recited acts, that is, within thirty days, his office is declared vacant and he ineligible.

In view of these statutes it is argued, that this is not a valid bond, be-cause *first*, not being given within thirty days, the office was vacant, and the sheriff could not therefore have given it under the statute.

Now, it is true that the Legislature has declared that unless bond is given within thirty days, the office shall be considered as vacant.

The object of this requirement is to secure the early services of an officer under bond, and the execution of the bond is a condition precedent to the enjoyment of the office; it perfects, so to speak, the sheriff's title to it. A default here works a forfeiture, against which the Inferior Court cannot afterwards relieve.

If there was no bond executed in this case, then was the office forfeited, and once a forfeiture always a forfeiture. The Inferior Court, in that event, could not have regarded him as sheriff; he could not have tendered, and they could not have received a bond, *colore officii*. But was there no bond given within time?

The record discloses that there was a bond executed by the sheriff Stephens, to the governor of the State, on the 11th January, 1840; and therefore within time. Whether that bond be valid or not, does not de-volve upon us to determine. It has not, so far as appears to us judicially, been declared invalid by any court having jurisdiction over it. The Infe-rior Court has not declared it void by declaring the office vacant, and or-dering a new election. We only know the fact that a bond was executed within time, and from aught that appears, that it is a good bond, and that the sheriff is properly in office. We cannot therefore say that the bond sued on is not a valid statutory bond, for the reason that the office was vacated.

2d. It is argued, that it is not a good statutory bond, because not hav-ing been taken within time, it is not taken according to the requirements of the statute.

It is insisted that, after the expiration of the time, it is not competent for the Inferior Court to demand a bond of the sheriff; that their power to take it is limited, as to time, by the statute; and that this bond, bear-ing date after the expiration of the prescribed time, cannot, in any sense, be considered as taken in conformity with the law. We consider this position impregnable. It is true, as claimed by learned counsel for the defendant in error, that if a bond, required by statute, departs from its strict provisions, as where the penalty is larger than that named in the act, it is notwithstanding good, so far as it is in conformity with it; un-less the statute expressly declares that all bonds, not taken in conformity with its provisions, shall be void.

This proposition, as a rule of law, has an exception in the case of a bond intended to operate as a fraud upon the obligors, by color of the law, or as an evasion of the statute.—2 *Bailey*, 376; 2 *N. & McCord*, 425; 2 *McCord*, 107; 6 *Binney*, 298. But this case does not fall with-in the doctrine last stated. This is not the case of a bond in part con-formed to a statute, and valid, as to that part, and void as to the re-mainder of its obligations. It is a bond required by the Legislature to be taken within a time limited, and taken beyond that time.

The act requiring it to be taken within thirty days, restricts the agent, viz., the Inferior Court, to that time; they cannot enlarge their powers. If they can defer a demand for the bond until one day after the time, they may a hundred, and thus defeat the intent of the Legislature altogether.

If the court has the power to demand a bond in this case, I see no reason why the right would not equally exist, in a case where there was confessedly a forfeiture of the office. But could they by asking, and the sheriff by giving, a bond, where none had been given in time, revoke the forfeiture of his office? Clearly not. Besides, if they in such a case may be considered as, under the law, entitled to call upon him for a bond, he must have the reciprocal right to give one, and thereby retain an office which his previous default had vacated. Besides, having given one bond, the sheriff has complied with the condition upon which he is to hold office, and the court has no right to cast burdens upon him which the law does not impose.

These views are intended to illustrate the position that this cannot be regarded as a statutory bond. We do not find that this conclusion is much strengthened by the fact which counsel for the plaintiff in error seemed to regard as of some importance, that there was no *dedimus potestatem*, to the Inferior Court to take this bond.

If the law does not confer the power, the executive *dedimus* cannot give it, and if it does, then the *dedimus* is but a wasteful surplusage. We have seen that the Legislature has conferred it, but, as we have attempted to show, to be exercised within a limited time.

What further remains is to inquire whether this be a valid bond at common law? We think it is. We recognize the position occupied by the counsel, that to be good as a voluntary bond, it must have all the incidents of a deed; it must be signed sealed, attested and *delivered*. One of these incidents, to wit, delivery, it is said, is wanting. The bond is made payable to Charles J. McDonald, Governor of the State of Georgia, and his successors in office, and the argument is, that it was not delivered to Charles J. McDonald. We cannot see that it was necessary.

In considering the question, whether it be, or not, a good voluntary bond, we must look to the circumstances under which, and the character in which, it was given. A bond made to A and delivered to B is void for want of delivery. That is, however, not this case. The obligor, Stephens, is the sheriff of Baldwin county; as sheriff he goes to the Inferior Court, and suggesting that his previously executed bond was considered void by some, of his own mere motion tenders to them an additional bond, which they accept. The act was voluntary. It does not appear that the court, *virtute officii*, as agents of the State, considered the previous bond void, and asked a new one, or used any means, by suggestion, threats, or otherwise, to get it. The evidence is that he of his own accord tendered it.

Now it does seem to me that it does not lie in the mouth of this obligor to object to the validity of this bond. He is estopped, and so are his securities; for their assumption of the obligations of the bond was also voluntary, and they are his privies in law. What can they say against the breach of a contract thus intelligently, willingly and honestly made? Nothing. They must lie down under the burdens they have assumed.

We have said that it was not necessary that this bond should be delivered to Charles J. McDonald. We have already seen that the Inferior Court are by law authorized to take the sheriff's bonds; and to them, or one of the Judges of the Superior Court, as the appointee of the law, it could alone be legally delivered, *and to them it was delivered.* Charles J. McDonald has no more interest in it that any other citizen. His name is but the representative of the sovereignty of the State. It is the people's bond, made payable to him, as a nominal custodier of its obligations.

The true position upon this point is this : a bond required by statute and made payable to the Governor, is payable to the office. In this particular the Governor represents the people, and may be regarded as a sole corporator, and each chief executive takes everything that belongs to the office by succession.—2 *Bailey*, 378 ; 1 *McCord*, 568 ; 2 *Bailey*, 13.

And here it may be well to dispose of the exception, that this action cannot be sustained in the name of *George W. Crawford, Governor of the State of Georgia and successor of Charles J. McDonald* without an assignment. Upon the principles above stated, there is no difficulty here. It is made, by the act of the parties to it, payable to¹ the *successors* of Governor McDonald, and the pleadings show that George W. Crawford is his *successor.* The law which creates an official bond, and makes it payable to a public officer and his successors, makes a transfer and tradition of it to each incumbent. As before stated, they take the bond as appertaining to their office by succession. In this aspect of this cause, that is, looking at it with reference to the rights of the obligees, the bond assumes a statutory character. But more of this anon.

To return to the question of delivery. The only inquiries to test the sufficiency of the delivery are, to whom does the law direct this bond to be delivered, and was it delivered to the persons appointed by law to receive it? The answers are, that the statutes of Georgia declare the Inferior Court competent to take it, and require it to be turned over to the clerk of the Superior Court for custody, and that it was taken before them, and by them delivered to the clerk of the Superior Court. All of which not only amounts to delivery, but, in our judgment, is the only kind of delivery which would fulfill the requirements of the law.

We have said that after the expiration of thirty days, the Inferior Court has no power or right to *demand* an additional bond from the sheriff. Whilst this is true, we yet hold that it is competent for them, in their official character, and with a view to secure the faithful execution of the duties of the sheriff, to *receive* an additional bond from him, when voluntarily tendered ; and, when so received, the rights under it inure to the parties interested, as in case of the first bond. The security is cumulative. Their original power to receive a bond is continued, in cases where the law being complied with and the sheriff in office he in that character tenders other securities.

In this view of it the bond would seem to be statutory. As to the obligors, it is unquestionably voluntary.

Taking into view the circumstances under which it was made ; the character of the obligor, and also of those to whom it was delivered ;

we can give it no other designation than this, to wit, a common-law bond. And being delivered to the Inferior Court, and attested by them, and found where the law directs it to be placed—in the custody of the clerk of the Superior Court—we are of the opinion that the presiding judge committed no error in admitting a certified copy of it to go in evidence.

Let, therefore, the judgment of the court below be affirmed.