### HAUPT *v.* THE STATE.

1. Where an indictment for embezzlement charged that the offense was committed on a named date, and that the accused was then the treasurer of a designated corporation, and it appeared upon the trial that he did not hold such office at the time alleged, the State was not restricted to the day specified in the indictment, but had the right to prove that the accused committed the crime, while such treasurer, at any time prior to the finding of the indictment, within the statute of limitations.

2. Even if some incompetent evidence as to a collateral matter be admitted, yet if the legal evidence, wholly disconnected from that not competent, clearly and beyond all reasonable doubt demanded the verdict of guilty, a new trial will not be granted.

Argued June 19,— Decided July 19, 1899.

Indictment for embezzlement. Before Judge Falligant. Chatham superior court. March term, 1899.

*Walter C. Hartridge,* for plaintiff in error.
*W. W. Osborne, solicitor-general,* contra.

FISH, J. At the December term, 1898, of Chatham superior court, a special presentment was found against George W. Haupt, charging that on September 29, 1898, he, being then the treasurer of the Georgia Pine Railway Co., a corporation of this State, did embezzle and steal certain named amounts of money belonging to such company. Upon the trial the evidence disclosed that the accused was treasurer of the railway company

from May, 1897, until September 19, 1898, when he ceased to hold such office, and was not afterwards connected with the company. The evidence for the State showed that the embezzlement was not committed on the date charged, but at various times prior thereto, and while the accused was treasurer of the railway company.

1. Counsel for the accused requested the court to charge the jury, in substance, that, time being of the essence of embezzlement, the offense must be charged to have been committed upon a day when the accused was treasurer of the Georgia Pine Railway Co., and that the State must prove the offense to have been committed upon the day alleged; that as the accused was charged with having committed the offense on September 29, 1898, before the jury could convict him they must find that he was, upon that date, treasurer of the railway company, and did then embezzle the money of the company, and that if he was not treasurer of the company on September 29, 1898, they could not convict him. The court refused so to charge, but on the contrary charged, in substance, that the State was not bound to prove the commission of the offense on the date alleged in the presentment, but that the jury might convict if the State proved that the accused, at any time within four years prior to the finding of the presentment, was the treasurer of the railway company, and while holding such office he embezzled its money. Error was alleged, in the motion for a new trial, upon the refusal of the court to give the request, and upon the charge given. We do not think the complaint meritorious. The variance between the charge and the proof was not such as might have misled the accused in making his defense, or have exposed him to the danger of being twice put in jeopardy for the same offense. It has often been ruled by this court that the State is not bound to prove the commission of the offense charged in an indictment on the precise date alleged therein, but may prove its commission at any time within the statute of limitations next preceding the date of finding the indictment. Therefore when the presentment in this case charged that the accused, on the 29th of September, 1898, being then and there the treasurer of the Georgia Pine Railway

Co., etc., did then and there embezzle and steal, etc., the legal effect of such a charge was that the accused, on the 29th of September, 1898, and on every other day within four years next preceding the finding of the presentment, being then and there the treasurer of the Georgia Pine Railway Co., etc., did then and there embezzle, etc. If on the trial of one indicted for selling liquor without a license it appeared that the accused had a license on the date alleged in the bill, we apprehend that the State would not be precluded from proving that he sold at some other time within two years next preceding the finding of the bill and when he did not have a license. So if an indictment charged one with the commission of the offense of adultery on a certain date, and the proof was that on the date alleged the accused was not married, could not the State show that the accused on some other date within the statute of limitations, while married, committed the offense with the person named? Or suppose on a trial for burglary the evidence disclosed that the house burglarized had been destroyed by fire the day prior to the date the offense was charged to have been committed, would not the State be permitted to prove that just before the house was burned it had been burglarized, if the time was within the statute of limitations? We think to turn criminals loose upon such immaterial variances and pure technicalities would be a travesty upon the administration of criminal law.

2. The court permitted Williams, a witness for the State, over the objection of the accused, to testify, in effect, that about October 3rd or 4th, 1898, the accused stated to the witness that he, the accused, was short with the Oglethorpe Real Estate Co. and with the Duffy Street Baptist Church, and that he had strong hope of procuring sufficient money to pay these mortgages, as well as his shortage with the Georgia Pine Railway Co., by negotiations with a friend in New York. The accused contended that this testimony was irrelevant and immaterial, and that it tended to prejudice him in the minds of the jury, because it was sought by this testimony to show that he was guilty of offenses other than the one for which he was being tried. The State, on the other hand, contended that this evi-

dence tended to show that the accused was hard pressed for funds at the time he was charged with embezzling the money of the Georgia Pine Railway Co., and that it thus showed a motive for him to commit the offense for which he was being tried. We think the evidence was inadmissible. In *Bulloch's* case, 10 *Ga.* 47, the evidence there admitted showed that he was in straightened circumstances at the time of the embezzlement, while here the evidence only showed that the accused was in pressing need of money at the time of the conversation with Williams, which was several weeks subsequent to the date the accused had ceased to be treasurer of the Georgia Pine Railway Co. The evidence for the State showed that the accused, as treasurer of such company, had been drawing checks for sums in excess of the amounts necessary to pay drafts, with accompanying vouchers, drawn on him by the manager of the rail way company, at various times from September, 1897, to, say, September 12, 1898. This being true, we hardly see how the fact that the accused admitted that he was short with the Duffy Street Baptist Church and the Oglethorpe Real Estate Co., on October 3rd or 4th, 1898, tended to prove that he was in pressing need of money during the year from September, 1897, to September, 1898. Granting, however, that the testimony was incompetent, we do not think its admission sufficient cause for granting a new trial. The evidence was as to a collateral matter, and the legal evidence in the case, wholly disconnected from that which was incompetent, clearly and beyond all reasonable doubt, required a verdict of guilty at the hands of the jury. The evidence showed that the system employed by Haupt in defrauding the Georgia Pine Railway Co. was as follows: The drafts and accompanying vouchers drawn by the manager of the company on Haupt, as its treasurer, were very numerous, and came through several banks, and were presented for payment nearly every day. When Haupt received notice that a bank held a draft on him for a certain amount, he would make out a check payable to that bank for a sum in excess of the amount of the draft. This check he would present to the bank himself and request the difference in cash, stating, by way of explanation to the teller, that he had other drafts in other

banks to pay that day, and that he did not desire to draw any more checks for that purpose. He appropriated the excess to his own use. This system was continued during most of the time he was treasurer of the company, and the amount he appropriated was more than $3,000.00. The drafts drawn by the manager with the accompanying vouchers, Haupt's checks to cover them, and the stubs of the checks were all in evidence, and showed the exact amounts for which he overdrew. It was proved that the excess of his checks was paid to him, and he made no explanation of the disposition he made of the excess in any instance. While he made a long, rambling statement, it simply amounted to a general denial of his ever having appropriated any of the funds of the railway company to his own use. Independently, therefore, of the illegal testimony admitted, the legal evidence in the case demanded the verdict, and, according to the rulings made in the cases cited below, there was no error in refusing to grant a new trial. *Stephens* v. *Crawford*, 1 *Ga.* 580; *Murphy* v. *Justices*, 11 *Ga.* 331; *Reid* v. *State*, 14 *Ga.* 43; *Mathis* v. *State*, 33 *Ga.* 31; *Beck* v. *State*, 57 *Ga.* 351; *Malone* v. *State*, 77 *Ga.* 767; *Bone* v. *State*, 86 *Ga.* 108.

*Judgment affirmed. All the Justices concurring.*