# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1902.

### WELBORNE *v.* THE STATE.

1. A court created by a special act of the General Assembly, which is located by the terms of the act at a county-site which has been expressly declared to be a city by an act incorporating the same, which has jurisdiction to try criminal cases below the grade of felony, and civil jurisdiction over a portion or all of those classes of cases jurisdiction over which is not by the constitution exclusively vested in some other court, with territorial jurisdiction in both civil and criminal cases, either throughout the limits of the county, or jurisdiction in one class of cases limited to the city, and in the other class coextensive with the limits of the county, with a jury of twelve to try all cases, both civil and criminal, if a trial by jury is demanded, is " a city court," within the meaning of that term as used in the constitution of this State.

(*a*) A court of the character above described has, by the terms of the constitution, the power to grant new trials, and jurisdiction is also conferred by that instrument upon the Supreme Court to correct the errors of such court by writ of error, whether the power to grant new trials or the jurisdiction of the Supreme Court to review by writ of error is conferred by the act creating the court or not.

(*b*) If the act creating the court provides that a jury of less than twelve shall try any case, the court is not " a city court," within the meaning of that term as used in the constitution.

(*c*) If the act creating the court locates the same at any other place than a county-site, or at a county-site which has not been expressly incorporated as a city, the court thus created is not " a city court," within the meaning of that term as used in the constitution.

(*d*) If the court has the requisites above referred to, it is immaterial what may be the other details prescribed in the act in reference to the manner of appointment of judge and other officers, practice, procedure, etc.

(*e*) Whether a court having jurisdiction, territorial or otherwise, less than as above indicated is a " city court," within the meaning of that term as used in the constitution is not now decided.

2. While the city court of Atlanta and the city court of Savannah are courts of purely statutory creation, they are named expressly in the constitution as courts from which a writ of error will lie to this court; and the General As-

sembly has authority to make any change it deems fit in reference to the jurisdiction, practice, procedure, etc., of either of such courts in order to adapt the same to the existing conditions and needs of the city in which it is located, and no change in reference to such court will have the effect to take away the jurisdiction of this court to correct the errors of such court by writ of error.

3. The criminal court of Atlanta, established by the act of September 6, 1891, is a new and independent court, and not a part of the city court of Atlanta.

4. The General Assembly has no authority to establish two or more city courts in either the city of Atlanta or the city of Savannah.

5. The act of September 6, 1891, which is entitled " an act to establish the criminal court of Atlanta and in pursuance thereof to amend an act establishing city court of Atlanta, passed December 15, 1871, and acts amendatory thereof, and for other, purposes," does not, so far as the act provides for the withdrawal of criminal jurisdiction of the city court of Atlanta, that the judge of the city court of Atlanta may preside in the criminal court of Atlanta, that the judge of the criminal court may preside in the city court and when so presiding therein the city court may sit in two divisions for the disposition of the business of that court, with two panels of jurors, one for each division, contain matter different from what is expressed in the title thereof.

6. Nor is the act above referred to subject to the objection that it refers to more than one subject-matter.

7. Nor is that portion of the act which withdraws criminal jurisdiction from the city court subject to the objection that it is an amendment or repeal of any part of the act creating the city court of Atlanta by a mere reference to its title.

8. The General Assembly may provide that a city court may sit in two divisions, and it may also provide that the judge of another court may preside as judge of one of the divisions of the city court; and cases tried before either division of the city court are tried in the city court, and errors committed in the trial of such cases may be reviewed by this court on writ of error signed by the judge presiding in the particular case, whether such judge is a judge of the city court or not, provided there is express statutory authority allowing such other judge to preside in the city court.

9. It follows from the foregoing that this court has no jurisdiction to review by writ of error the judgments of the criminal court of Atlanta, and the writ of error from that court will be dismissed. It likewise follows that this court has jurisdiction to review by writ of error the judgments of the city courts of Atlanta and Savannah, whether the judgments of the former court be rendered by the judge of that court or by the judge of the criminal court of Atlanta presiding in the second division of the city court, as well as other city courts coming within the description set out in the first headnote; and therefore jurisdiction is taken by this court in the different cases referred to in the opinion and which are now pending on writs of error.

Argued January 21,— Reargued March 3,— Decided March 10, 1902.

Writ of error from criminal court of Atlanta.

*Alexander W. Stephens,* for plaintiff in error.
*Eugene R. Black, solicitor,* contra.

On reargument upon the question of jurisdiction appeared *L. Z. Rosser, Hoke Smith, P. H. Brewster, C. T. Hopkins, A. C. King, R. R. Arnold, E. R. Black,* and *Spencer R. Atkinson.*

COBB, J.　In the case of Welborne *v.* The State, pending in this court on a writ of error from the criminal court of Atlanta, the point was made that so much of the act creating that court as provides that criminal cases shall be tried in that court by a jury of five is unconstitutional, for the reason that the court is a city court within the meaning of that term as used in the constitution, and that by the terms of that instrument juries in city courts must consist of twelve jurors. The investigation necessary to determine this question involved a consideration of the act creating the criminal court of Atlanta as well as the various acts relating to the city court of Atlanta. During the progress of this investigation it became evident that the status, even if not the existence, of the criminal court of Atlanta, as well as that of the second division of the city court of Atlanta, was a matter the determination of which was not free from difficulty, and that the right of the Supreme Court to review the decisions of the city court of Atlanta, as it now exists, was not altogether free from doubt. As there were many cases pending in this court on writs of error from those courts, we felt it our duty, on our own motion, to raise the question of jurisdiction in this court to review the judgments of those courts, that the doubts existing as to the question of jurisdiction might be removed, if possible, and in any event to determine the question of jurisdiction, so that litigants and their counsel could at least in the future have no question as to the remedies which the law gave them. Counsel in the various cases were notified that argument would be heard on these questions, and those interested in sustaining the jurisdiction of this court selected seven of their number to appear in this court and present their views, which was done in a very able and exhaustive brief, which was supplemented by an oral argument in which three of the seven participated. No one appeared to attack the jurisdiction of this court. The argument was not limited to the status of the city court of Atlanta, but brought within its range all city courts now existing in this State. For this reason we have deemed it a fit opportunity to settle, so far as we can, the status of the various city courts in this State, so that this matter, which has more than once been the occasion of some perplexity to

this court, and about which there exists in the minds of those interested in the matter some doubt, to say the least, may be set at rest, if not for all time, certainly so long as the court stands as at present constituted. To this end we ourselves have raised the question of jurisdiction in different cases pending in this court from various city courts in the State which have been established in duly incorporated cities. The cases in which we have raised the question of jurisdiction are as follows: Hecht *v.* Snook & Austin Furniture Company, from the city court of Atlanta; Dodson Printers' Supply Co. *v.* Harris, from the second division of the city court of Atlanta; Brucker *v.* O'Connor, from the city court of Richmond county; Susong *v.* F. C. & P. Ry. Co., from the city court of Savannah; Travelers' Protective Association *v.* Small, from the city court of Macon; Maxwell *v.* Family Protective Union, from the city court of Athens; Welborne *v.* State, from the criminal court of Atlanta; McGehee *v.* State, from the city court of Moultrie; Gay *v.* State, from the city court of Bainbridge; Lampkin *v.* Pike, from the city court of Jefferson; Owen *v.* Palmour, from the city court of Hall county; Eastlick *v.* Southern Railway Co., from the city court of Floyd county; Smith *v.* Zachry, from the city court of LaGrange; Moon *v.* Potter, from the city court of Americus (see Acts of 1901, p. 92); Jones *v.* Spence, from the city court of Waycross; Sutton *v.* Americus Guano Co., from the city court of Douglas; Southern Ry. Co. *v.* Overstreet, from the city court of Baxley; Commercial Bank of Jacksonville *v.* Flowers, from the city court of Brunswick.

1. Whatever is said in the following discussion can therefore be treated as authoritative, and a direct ruling upon the right of this court to review by direct bill of exceptions the decisions of the courts above named. It is not only the right but the duty of a reviewing or appellate court to raise the question of its jurisdiction in all cases in which there may be any doubt as to the existence of such jurisdiction. See, in this connection, Cutler *v.* Rae, 7 How. 731. We will first call attention to the different provisions in our present constitution relating to city courts, and will follow this with a reference to past history, from which can be derived the origin of the city court as it now exists. The constitution refers to city courts eo nomine in five places only. The paragraphs in which these references are made are as follows: " The Supreme

Court shall have no original jurisdiction, but shall be a court alone
for the trial and correction of errors from the superior courts, and
from the city courts of Atlanta and Savannah, and such other like
courts as may be hereafter established in other cities; and shall sit
at the seat of government at such times in each year as shall be
prescribed by law, for the trial and determination of writs of error
from said superior and city courts." Civil Code, § 5836. "The
General Assembly may provide for an appeal from one jury, in the
superior and city courts, to another; and the said courts may grant
new trials on legal grounds." Civil Code, § 5847. "In any county
within which there is, or hereafter may be, a city court, the judge
of said court, and of the superior court, may preside in the courts
of each other in cases where the judge of either is disqualified to
preside." Civil Code, § 5851. "The jurisdiction, powers, proceed-
ings and practice of all courts or officers invested with judicial pow-
ers (except city courts), of the same grade or class, so far as regu-
lated by law, and the force and effect of the process, judgment and
decree by such courts, severally, shall be uniform. This uniformity
must be established by the General Assembly." Civil Code, § 5859.
"The right of trial by jury, except where it is otherwise provided
in this constitution, shall remain inviolate, but the General Assem-
bly may prescribe any number, not less than five, to constitute a
trial or traverse jury in courts other than the superior and city
courts." Civil Code, § 5876. See also, in this connection, *Wells*
v. *Newton*, 101 *Ga.* 142.

The constitution of 1789 provided that the superior courts should
have exclusive jurisdiction "in all criminal cases" and "in all cases
respecting title to land." Marb. & Craw. Dig. 27. Whether other
cases than those of the character referred to should be tried in other
courts than the superior courts was left to the wisdom and discre-
tion of the General Assembly. In 1818 an amendment to the con-
stitution was adopted, which provided that criminal offenses, not
subjecting the "offender to loss of life, limb or member, or confine-
ment in the penitentiary," should no longer be within the exclusive
jurisdiction of the superior courts, but the same might be tried in
"corporation courts" then existing, or that might "be constituted
in any incorporated city, being a seaport town or port of entry."
Prince's Dig. (ed. 1822) 555; Cobb's Dig. 1121. In 1816 a court
with jurisdiction in civil cases not involving title to land, where

the sum claimed did not exceed $50, was established in Darien. It was styled the mayor's court of Darien, was presided over by the mayor of Darien, or, in his absence, by three members of the town council. Trial by jury was allowed in cases of appeal, but not otherwise. The court had no criminal jurisdiction. Cobb's Dig. 634. In 1817 there was established in Augusta a court styled the mayor's court, which appears to have had jurisdiction in all civil cases where the constitution did not vest exclusive jurisdiction in other courts, and cases in this court were tried by a jury of twelve. This court does not appear to have had any criminal jurisdiction, and its civil jurisdiction was apparently limited to the corporate limits of the city of Augusta. Cobb's Dig. 603. In 1819 a court was established in Savannah styled the court of common pleas and oyer and terminer for the city of Savannah. It had jurisdiction in "civil cases in assumpsit, debt, covenant, trover, and of actions on the case, when the damages or cause of action" did not exceed $200 and was not less than $30, and criminal jurisdiction of all offenses committed within the limits of the city of Savannah which did not subject the offender to confinement in the penitentiary. The judge was elected by the General Assembly. The court had a grand jury, and a trial jury of twelve for all cases. The procedure in criminal cases was the same as in like cases in the superior courts. It had twelve terms a year, one each month, and its judgments were subject to review by the superior court on certiorari. Cobb's Dig. 617. Mr. Prince in his Digest of 1822 (p. 233) refers to these three courts as "city courts," and groups them in a class by that description. So far as we have been able to ascertain, this is the first time the term "city court" as applied to a local court of the character above named appears in any work on or compilation of the laws of Georgia, and we have little doubt that the use of this term as a designation for such courts in this State originated with Mr. Prince. He adheres to the same term in his Digest of 1837. See pp. 481, 491, 498. Mr. Cobb adopts the term used by Mr. Prince. See Cobb's Digest (1851), 602, 617, 634. In 1826 the name of the court established in Augusta was changed to that of the "court of common pleas for the city of Augusta." Cobb's Dig. 608. And in 1856 the name was again changed to that of the "city court of Augusta," and as such it was given jurisdiction in criminal cases where the offense charged was less than a felony, as that term

is now understood; and provision was made for a grand jury.    Acts 1855—6, p. 246.    In 1853 the name of the court established in Savannah was changed to the " city court of Savannah;" and its civil jurisdiction raised to $500.    Acts 1853—4, p. 281.    In 1856 local courts were established in Macon, Rome, Atlanta, and Columbus. Some were called city courts; one was not so styled, the court established at Columbus being called the criminal court of Columbus.    All these courts had criminal jurisdiction only.    See Acts 1855—6, p. 240.

The constitution of ·1861 provided that the superior courts should have exclusive jurisdiction in cases of divorce, cases respecting title to land, and criminal cases subjecting the offender to loss of life, limb or member, or confinement in the penitentiary; and provision was made that other criminal cases might be tried in corporation courts established in " any incorporated town or city." Code of 1863, §§ 4974—4977.    The constitution of 1865 contained the provisions of the constitution of 1861 as to the exclusive jurisdiction of the superior courts, but courts for the trial of minor offenses were therein·referred to as " county or corporation courts," or such other courts, judicatures, and tribunals as might thereafter be constituted.    Code of 1868, §§ 4964—4967.    The jurisdiction of the Supreme Court to review the judgments of city courts was first conferred by the constitution of 1865 in the paragraph defining its jurisdiction, which was as follows: " The said court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors in law and equity from the superior courts of the several circuits, and from the city courts of the cities of Savannah and Augusta, and such other like courts as may hereafter be established in other cities, and shall sit ' at the seat of Government ' at such time or times in each year as the General Assembly shall prescribe, for the trial and determination of writs of error from said courts."    Code of 1868, § 4961.    There may have been other local courts established between 1816 and 1865 than those above referred to, but for the purposes of the present discussion it is not necessary to call attention to them, if they existed.    When the constitution of 1865 was adopted, it seems that all of these local courts had been abolished, except the city courts of Augusta and Savannah; at least that there was not in existence at that date a local court which in the estimation of the framers of the constitution

was entitled to rank either in dignity or importance with the city court of Augusta or the city court of Savannah. It was stated in the argument, and is stated in the brief, that in 1865 there were no other city courts in the State than those named in the constitution adopted in that year. We have found nothing in our investigations which would at all impeach the accuracy of this statement. In any event, while possibly there may have been some local courts of very limited jurisdiction, there were certainly no other city courts eo nomine.

It becomes important now to ascertain exactly what was the character of the city court of Augusta and the city court of Savannah in 1865. At that time the city court of Augusta had jurisdiction in civil cases above the jurisdiction of justices of the peace, where the amount involved did not exceed $10,000 and exclusive jurisdiction was not vested in the superior courts, and in criminal cases below the grade of felony. It had a grand jury to indict offenders, and a jury of twelve to try both civil and criminal cases. See Acts 1855 − 6, p. 246; Acts 1864 − 5, p. 61. Its territorial jurisdiction was bounded by the limits of the city of Augusta. The court had not remained stationary in jurisdiction, powers or procedure, but various changes had been made between 1817 and 1865. See Cobb's Dig. 602, 603, 607, 608, 609, 610, 612, 614, 615, 646 ; Acts 1855 − 6, p. 246; Acts 1861, p. 91; Acts 1864 − 5, p. 61. In 1865 the city court of Savannah had jurisdiction in civil cases above the jurisdiction of the justices of the peace, where the amount involved did not exceed $500, and where exclusive jurisdiction was not vested in the superior courts, and in criminal cases below the grade of felony. It had a grand jury and a trial jury of twelve. See Acts 1853 − 4, p. 281; Acts 1819, p. 16. Its territorial jurisdiction in civil cases extended to the limits of the city of Savannah, and in criminal cases two miles beyond such limits. Acts 1857, p. 114. This court had not remained stationary in jurisdiction, powers, or procedure, but various changes had been made. In some respects it was similar to the city court of Augusta, but in other material particulars it was radically different. See Acts 1819, p. 16; Acts 1821, p. 24; Acts 1831, p. 96 ; Acts 1837, pp. 77, 83 ; Acts 1841, p. 76 ; Acts 1843, p. 38 ; Acts 1853 − 4, p. 281; Acts 1855 − 6, p. 488 ; Acts 1857, p. 114. According to the census of 1860, Augusta had a population of 12,493, while Savannah had

a population of 22,292. See Georgia Historical and Industrial, 901, compiled by Hon. O. B. Stevens, commissioner of agriculture. While in 1865 Savannah was the larger city in population and probably in wealth, the court established in Augusta had far greater jurisdiction in civil cases, though the Savannah court had larger territorial jurisdiction. Each court was undoubtedly adjusted to local conditions and needs which could hardly be exactly met by courts of uniform jurisdiction established by a general law. The constitution of 1868 declared that the exclusive jurisdiction of the superior courts should exist in divorce cases, cases respecting title to land, equity cases, and felony cases, and left the question as to what courts should deal with other cases to the judgment and discretion of the General Assembly, which was authorized to establish other courts than those named in the constitution. Code of 1873, §§ 5090, 5084. The provision of the constitution of 1868 defining the jurisdiction of the Supreme Court is in the following language: "The Supreme Court shall have no original jurisdiction, but shall be a court alone for the trial and correction of errors from the superior courts and from the city courts of Savannah and Augusta, and such other like courts as may be hereafter established in other cities; and shall sit at the seat of government at such times in each year as shall be prescribed by law, for the trial and determination of writs of error from said superior and city courts. The days on which the cases from the several circuit and city courts shall be taken up by the court shall be fixed by law." Code of 1873, § 5086. It will be noted that this is in substance the same as the provision in the constitution of 1865 on the subject.

There were no city courts established between 1865 and 1868. In 1866, between the dates of the adoption of the two constitutions last referred to, the civil jurisdiction of the city court of Augusta was decreased from $10,000 to $1,000. Acts 1866, p. 73. In the same year the civil jurisdiction of the city court of Savannah was raised to $1,000, and it was given jurisdiction in proceedings to dispossess tenants from lands and tenements within the city of Savannah, without reference to the amount of rent due. Acts 1866, p. 57. The constitution of 1877 declares the exclusive jurisdiction of the superior courts to be the same as it was under the constitution of 1868. Civil Code, § 5842. The city court of Augusta was abolished in 1876. Acts 1876, p. 97. The present city court

of Atlanta was established in 1871.    Acts 1871–2, p. 57.    When the constitution of 1877 was adopted the only city courts in existence were the courts of that name located in the cities of Atlanta and Savannah.    In the paragraph defining the jurisdiction of the Supreme Court the language is similar to that contained in the two preceding constitutions, but the city court of Atlanta is substituted for the city court of Augusta.    By the act of 1871, creating the city court of Atlanta, that court had jurisdiction in civil cases above the jurisdiction of justices of the peace, involving not exceeding $3,000, where exclusive jurisdiction was not vested in the superior courts, and in criminal cases below the grade of felony.    The territorial limit was the city of Atlanta.    Criminal cases were tried by a jury of five, civil cases by a jury of twelve.    There was no grand jury.    See Acts 1871–2, p. 57.    By acts passed in 1875 and 1876 the territorial jurisdiction both in civil and criminal matters was enlarged so as to embrace the whole of Fulton county.    Acts 1875, p. 40; Acts 1876, p. 96.    The act was amended, and the jurisdiction, powers, procedure, etc., changed in various ways between the date the court was established and the date the present constitution was adopted.    See Acts 1873, p. 119; Acts 1874, p. 135; Acts 1875, p. 40; Acts 1876, p. 96; Acts 1877, p. 46.    When the constitution of 1877 was adopted the territorial jurisdiction of the city court of Savannah had been extended in criminal cases so as to embrace the entire county of Chatham.    The general character of the two courts named in the constitution as city courts can be gathered from the foregoing statement.    The points of similarity between the two courts were few; the points of dissimilarity were many.    They were both like each other in that they were each unlike the city court of Augusta.    These three were like each other in that each of them was unlike the city court of Darien.    All four of these courts were like each other in one essential particular, and that is, their origin.    The city court of Darien, which had civil jurisdiction a little higher than the justice's court and considerably lower than the present county courts, and had no criminal jurisdiction, and was presided over by the mayor, owed its existence to a similar state of facts which brought the city court of Atlanta into being, with its jurisdiction over practically every matter where the constitution does not vest exclusive jurisdiction in other courts, and a presiding judge whose qualifications are prac-

tically the same as those prescribed for judges of the superior courts. In each instance there was a local condition and a pressing need for a court of a given jurisdiction. In 1816 a court authorized to try cases involving between $30 and $50 met the wants of the city of Darien. In 1876 it required in Atlanta a court whose jurisdiction was exhaustive of all matters of litigation not elsewhere vested by the constitution. How unlike in jurisdiction, dignity, powers, etc., are the city court of Darien in 1816 and the city court of Atlanta in 1877, and how like they are to each other in the circumstances which brought each into existence! The city court of Darien was the first court of that character ever created in this State, and the city court of Atlanta was the last creation of that character prior to the adoption of the present constitution.

What has been said in reference to the four courts that have been named will apply to every city court created between 1816 and 1877. They were all unlike each other in powers, jurisdiction, etc., and their likeness to each other consisted in the fact that each was brought into existence by local conditions or needs peculiar to the place where the court was established. It would tax beyond its power the ingenuity of the most fertile mind of the legal profession this State has ever had among its members to frame a law creating a court which should be in all respects like both the city courts of Atlanta and Savannah. If such a court can not be created, then it would seem to follow that the constitution prescribes two models for city courts. They must be like one or the other of these two courts. Are the city courts all to be like one or the other of these models? This can not possibly be. A court exactly like the city court of Atlanta might not suit another city, and one like the city court of Savannah in all respects will hardly ever be appropriate to any other place in this State. The local conditions in both Atlanta and Savannah are, in many important particulars, as different from other cities in the State as the conditions in each of those cities are different from those in the other. It is said, however, that the new courts need not be exactly the same but they must be substantially the same as to jurisdiction, etc., as one or the other of the courts named in the constitution. In *Western Union Tel. Co.* v. *Jackson*, 98 *Ga.* 210, Mr. Justice Atkinson says that a court does not fall within the class of city courts from which a writ of error will lie to the Supreme Court, unless it is " modeled sub-

stantially upon the same plan as the city courts of Atlanta and Savannah." Similar language is used by the same Justice in *Stewart* v. *State*, 98 *Ga*. 205. In the case of *Wight* v. *Wolff*, 112 *Ga*. 174, the writer says, in substance, that a city court does not fall within the terms of the constitution unless it has substantially the jurisdiction and powers of either one or the other of the city courts named in the constitution. Similar language was used by Mr. Chief Justice Simmons both in the headnote and the opinion in *Ivey* v. *State*, 112 *Ga*. 175. In no one of the cases cited was necessarily involved the question as to whether a city court must be like the courts named in the constitution, in jurisdiction, powers, etc., the sole controlling question in each being whether the court in question had been located in a city. The courts in each instance may have been substantially like the courts named in the constitution, but it does not follow from what is said in those cases that all city courts must necessarily be substantially like the courts named in the constitution, either in jurisdiction, procedure, or otherwise. Similar expressions will no doubt be found in other opinions of the same Justices, and probably in the opinions of other Justices, but on the question now before us no Justice has ever heretofore spoken either authoritatively or advisedly.

The expression "like courts" in the constitution does not necessarily mean courts substantially similar to either of the city courts named, in practice, procedure, organization, officers, or jurisdiction. If the peculiar needs of a given locality required a court other than the superior court to dispose of cases which do not fall within the exclusive jurisdiction of the superior court, and a court were created to meet the existing conditions, with either the whole or only a part of the jurisdiction that could be constitutionally conferred, and the territory over which this court was to have jurisdiction were defined so as to meet the emergency presented by the affairs of this locality, such a court would be a like court to both the city courts of Savannah and Atlanta, notwithstanding its jurisdiction, powers, etc., were so radically different from both that it bore no substantial resemblance in the particulars named to either. It would be a "like" court to both of the courts named, because a "like" condition, a "like" need, a "like" emergency, a "like" want, and "like" circumstances had all been instrumental in bringing each of the three into existence. If all city courts must be substantially

like the courts named in the constitution, then there must be uniformity to a certain extent in reference to the practice, procedure, and jurisdiction of these courts. The constitution not only does not require that there shall be any uniformity in reference to the powers and jurisdiction of these courts, but on the contrary they are expressly excepted from the mandatory provision of the constitution requiring the General Assembly to provide for uniformity in jurisdiction, powers, proceedings, and practice of all courts of the same class. See Civil Code, § 5859. The constitution does not require uniformity in reference to city courts. It does not contemplate such uniformity. Its framers must have known from the experience of the past that the usefulness of such courts, yea, even their existence, would be hazarded, if not entirely destroyed, if uniformity was required. They occupy a peculiar place in our judicial system, — a place that could be filled only by a court fitted and adapted to local conditions, and one that could never be satisfactorily filled by a court created under a general law operating uniformly through-out the State. Their usefulness depends upon their lack of uniformity. Being unlike each other in jurisdiction, procedure, etc., their likeness to each other begins and ends with the circumstance that brings them into existence, and no further likeness is required, expected, or contemplated by the constitution. The judicial system provided in the constitution, with its one Supreme Court, and superior courts uniform in procedure, etc., with exclusive jurisdiction in given matters, and courts of ordinary uniform in practice, etc., with exclusive jurisdiction in given matters, and its justices' courts, uniform in both jurisdiction and procedure, was known to be a system which would be completely adequate for the needs of many localities, but it was also known that in many other localities other courts would be needed.

In many of the localities just referred to the conditions calling for additional courts were practically the same, and the needs of such could be met by a general law providing for the establishment of local courts of a given class, of uniform jurisdiction, procedure, etc. Such is the general county-court law. In some localities, however, it was foreseen that no uniform system of courts could be devised which would supply the wants of each of such localities. Such had been the experience of the past; such was the result of observation in the then present; and such would undoubtedly be

the case in the future. What was to be the exact condition of affairs in these localities could not be foreseen, and their needs and wants were to be met by appropriate legislation whenever, in the judgment and discretion of the General Assembly, a condition of affairs had arisen when the mass of business, outside of that over which exclusive jurisdiction had been lodged in given courts, demanded in any locality a court different from other courts in jurisdiction, procedure, etc., but peculiarly and appropriately adapted to the wants and needs of the community in which it is established. The city court was the court contemplated by the constitution as the one to fill such place in the judicial system of the State. The constitutional requisites of a city court are, that it shall be established in a city (Civil Code, § 5836; *S., F. & W. R. Co.* v. *Jordan*, 113 *Ga.* 687, and cases cited); its jurisdiction, powers, proceedings, and practice need not be uniform, but the General Assembly shall determine all such matters in each case (Civil Code, § 5859); it must have a jury of twelve to try all cases (Civil Code, § 5876; *Monford* v. *State*, 114 *Ga.* 528). Further than this the constitution does not set forth the requisites for a city court. All other matters in reference to the city court are left in each instance to be determined by the good sense and sound judgment of the General Assembly. If the court established has the requisites prescribed by the constitution, and it is plainly manifest there was a legislative intent to create a city court within the meaning of the constitution, then such court is a city court, and by the terms of the constitution has the power to grant a new trial and a writ of error to the Supreme Court, whether there is anything relating to these matters in the act creating the court or not. The power to grant new trials, and the right to have its judgment reviewed on direct writ of error by the Supreme Court, are constitutional incidents of a constitutional city court, and the General Assembly can not deprive such a court of the same either by an enactment expressly taking away or by a failure to expressly name them in the act creating the court. *W. & A. R. Co.* v. *Voils*, 98 *Ga.* 446. The fact that an act creating a court confers upon it the power to grant new trials or provides that its judgments may be reviewed by the Supreme Court on writ of error are circumstances to be looked to in determining whether there was a legislative intent to create a constitutional city court. *Ivey* v. *State*, 112 *Ga.* 175, 179.

Are the views just presented in accord with the rulings of this court? In the *Ivey* case, supra, Mr. Chief Justice Simmons says: "Under the constitution of this State, writs of error lie to this court from the superior courts of the State and from 'the city courts of Atlanta and Savannah and such other like courts as may be . . established in other cities.' We have examined the act creating the city court of Macon, and the act creating the city court of Atlanta which was in force at the time of the adoption of the present constitution. Without the use of parallel columns and without going into details, we will simply state that we think the acts are substantially alike. There is, of course, some difference in detail, but the courts established are, in constitution, practice, and procedure, substantially the same. We think that the constitution by the expression 'like courts,' does not mean courts identical in all respects. It is sufficient if the court established be substantially like the courts of Savannah and Atlanta or either of them." The motion to dismiss the writ of error in that case was upon two grounds: first, that the city court of Macon was not a like court to either of the courts named in the constitution; second, that it was not by the act located in the city of Macon. It was held that it was a court substantially like the city court of Atlanta in jurisdiction, etc. There was nothing in the case which required a ruling that a court not substantially like the city court of Atlanta or the city court of Savannah was not a like court. The conditions which brought the city court of Macon into existence were no doubt substantially like the conditions which brought about the creation of the courts named in the constitution. In *Collier* v. *Means*, 113 *Ga.* 681, it was held: "A city court, established in a 'city' which is not the county-site of the county wherein the same is located and whose jurisdiction extends over the city only and one militia district of that county, is not a court 'like' either the city court of Atlanta or the city court of Savannah as they existed at the time of the ratification of the present constitution of this State; and, consequently, a writ of error does not lie from a court so established to the Supreme Court." There are, so far as we have found, no other authoritative or apparently authoritative rulings on the subject under consideration. Under the ruling in *Collier* v. *Means*, a city court can not be established in a city which is not a county-site. This ruling was by a full bench of six Justices, and must

therefore stand until reversed by a full bench. Prior to 1877, no city court of any grade or class had ever been established at any other place than a county-site, and it is not to be presumed that the framers of the constitution intended such courts should in future be established in other places. It might be said that there may be one or more places in a county of more importance than the county-site in population, business, wealth, etc., that the county-site may be an unincorporated village, and that there may be a real city in the county. In such a case the only remedy is to remove the county-site. Such removal was often had before 1877, and can be . now had, though a removal is now attended with more difficulty than formerly. In any event, the ruling has been made, and some of us are still satisfied with its correctness, and those of us who now have some doubt as to its soundness do not desire to do more than to express the fact that such doubt exists.

Under the views above presented, so much is left to the discretion of the General Assembly that it would not be profitable, even were it possible, to lay down any inflexible rule by which it would be determined whether a given court was a city court within the meaning of that term as used in the constitution, and we will not undertake to frame such a rule. The General Assembly has from time to time created courts and styled them city courts, and we can determine in each instance whether the General Assembly has kept within constitutional limits. In October, 1891 (Acts 1890–91, vol. 1, p. 96, Civil Code, § 4270 et seq.), the General Assembly passed a general law providing for the establishment of city courts in counties of a given population, upon the recommendation of the grand jury. The courts established under this law were held not to be constitutional city courts, for the simple reason that they were not established in cities. *Western Union Tel. Co.* v. *Jackson,* supra. The very fact that the act creating these courts provided for uniformity in jurisdiction, etc., would seem also to take the courts out of the class of courts referred to in the constitution as city courts. From the very nature of such courts as they are recognized by the constitution, there would seem to be grave doubt as to whether a general law could be constitutionally enacted providing for the establishment of these courts. The General Assembly since 1877 has created by special enactment many courts which it styled city courts, beginning with the city court located at

Athens, created in 1879 (Acts 1879, p. 291), and ending with the city court of Buford, created on December 17, 1901 (Acts 1901, p. 96). There are now more than forty of such courts. Without reference to where the line is to be drawn when the power to create city courts no longer resides in the General Assembly, in the light of the provisions of the constitution relating to such courts, in view of the past history of the city courts of Augusta, Atlanta, and Savannah, and keeping in mind the rulings of this court in reference to such courts, we feel at this time perfectly safe in holding that a court created by a special act of the General Assembly, which is located by the terms of the act at a county-site which has been expressly declared to be a city by an act incorporating the same, which has jurisdiction to try criminal cases below the grade of felony, and civil jurisdiction over a portion or all of those classes of cases jurisdiction over which is not by the constitution exclusively vested in some other court, with territorial jurisdiction in both civil and criminal cases, either throughout the limits of the county or confined to the limits of the city, or jurisdiction of one class limited to the city and the other coextensive with the limits of the county, with a jury of twelve to try all cases, both civil and criminal, if a trial by jury is demanded, is a city court, within the meaning of that term as used in the constitution; and it is immaterial what may be the other details of practice, procedure, etc., contained in the act creating the court. If an act creating a court at any other place than Atlanta and Savannah provides that a jury of less than twelve *shall* try any case, the court is not a constitutional city court. *Monford* v. *State*, ante, 528. If an act creates a court at any other place than a county-site, or at a county-site which has not been expressly incorporated as a city, the court thus created is not a constitutional city court. *Collier* v. *Means*, supra; *S., F. & W. Ry. Co.* v. *Jordan*, supra. If an act creates a court which provides for a jury of twelve in all cases, or for such a jury upon demand in every case, and the court is located in a city which is the county-site, and has jurisdiction, territorial and otherwise, of the character above indicated, such a court is undoubtedly a constitutional city court. Whether a court having jurisdiction, territorial or otherwise, any less than as above indicated is a constitutional city court we will not now undertake to determine. The General Assembly may never create such a court. When it does, the question of its

power to do so can be raised and passed on. "Sufficient unto the day is the evil thereof." The General Assembly has, however, created courts of the character above mentioned, and litigants in such courts are here asking that judgments against them be reviewed by this court on writ of error. We are face to face with the question as to the status of these courts, and this question must be decided. By applying the standard above suggested to the city courts established in other places than Atlanta and Savannah, in which writs of error are here pending in the cases stated at the beginning of this opinion, we find that all such courts measure up to the standard; and jurisdiction is therefore taken by this court in each of such cases.

2. The next matter that will be considered involves, first, the question whether the General Assembly has power, under the constitution, to make any substantial change in the jurisdiction or procedure of the city courts of Atlanta and Savannah; and second, if such change can be made, whether it has the effect of depriving the Supreme Court of jurisdiction to review on writ of error the judgments of such courts. The constitution, after conferring upon this court jurisdiction to correct the errors of the superior courts, the city courts of Atlanta and Savannah, and such other like courts, etc., declares that the Supreme Court shall sit at the seat of government at such times as shall be fixed by law "for the trial and determination of writs of error from said superior and city courts." Jurisdiction to entertain writs of error from the two city courts named is conferred by the constitution. The General Assembly can not take it away by express enactment. Can it accomplish the same purpose by amending the law in reference to these courts? As has been seen, the city courts had their origin in the needs of particular localities, growing out of the fact that conditions were different from what they were in other places — conditions generally brought about by growth, increase in population, wealth and business. It was not to be presumed that Savannah and Atlanta would be stationary, so far as population and business were concerned, and it would not be presumed that a court fitted to the necessities of 1877 would meet the wants of 1900. Cities increase in population, wealth, and importance. Cities diminish in population, wealth, and importance. Courts intended to meet the conditions existing in cities must be adapted from time to time to the changing

conditions.    The act creating the city court of Augusta was amended in substantial particulars between 1865 and 1876, and the court was entirely abolished in the latter year.    The act creating the city court of Savannah was amended in many substantial particulars between 1865 and 1877.    The same is true of the act creating the city court of Atlanta between 1871 and 1877. These three courts were all courts of legislative creation. The constitutions of 1865, 1868, and 1877 authorized but did not demand their existence.    There was nothing in any of these instruments requiring their establishment, nor anything preventing the General Assembly from destroying them whenever in its judgment it was best to do so.    If they existed, the constitution of its own force conferred upon them certain powers, but whether they should be allowed to exist at all, in what form, and with what powers, was a question for determination by legislative discretion.    Once in existence, they were completely under control of the General Assembly, except where the constitution declared the contrary.    This court has, by the very terms of the constitution, jurisdiction to review cases from the city court of Atlanta and from the city court of Savannah on writ of error, and so long as these courts exist, no matter what changes may be made in their jurisdiction, powers, etc., by the General Assembly, the right to have the judgments of these two courts reviewed on writ of error is a right given to the litigants in such courts by the constitution of the State, which the General Assembly can not deprive them of, and which this court has no disposition either to impair or deny.    Whether the General Assembly can repeal the acts creating the city courts of Atlanta and Savannah, and thereafter establish other city courts in these cities, we will not undertake to decide.    The question is not now vital.

3. Does the act under which the present criminal court of Atlanta was established create a new and independent court, or is that court simply a part of the city court of Atlanta?    The title of that act is as follows: " An act to establish the criminal court of Atlanta, and in pursuance thereof to amend an act establishing city court of Atlanta, passed December 15, 1871, and acts amendatory thereof, and for other purposes."    In the first section of the act we find this language: " That, immediately upon the passage of this act, there be established in the county of Fulton a court to be known as the criminal court of Atlanta."    Throughout the entire act the

court established thereby is referred to as the criminal court of Atlanta or "said court." No reference is made to the city court except in those sections in which the criminal jurisdiction of the latter court is withdrawn, and the judge of the criminal court is authorized to preside in the city court, and the judge of the city court is authorized to preside in the criminal court, and the solicitor of the city court is allowed to continue in office as the solicitor of the criminal court. After a careful examination of the act, we can reach no other conclusion than that it was the intention of the General Assembly to create a new and independent court, and not merely to provide for a branch of the then existing city court of Atlanta. The fact that the act provides for a writ of error to the Supreme Court might indicate a legislative intention to create a city court. On the other hand, the fact that the act provides for a jury of five and does not in any way authorize a jury of twelve, even upon demand, would indicate a legislative intention not to create a city court. Other than the provision in reference to a writ of error, there is nothing to indicate an intention to create a city court, either in the name of the court or otherwise. Construing the act as a whole, we do not think that there was a legislative intention to make the court created part and parcel of the existing city court of Atlanta, but the legislative intention was either to create a new and independent city court, or, at least, a new and independent statutory court for the trial of misdemeanors.

4. Having reached the conclusion that the act under which the criminal court of Atlanta was established created a new and independent court, the question arises whether the court created by the act under which the criminal court was established is a "like" court to the city court either of Atlanta or Savannah, and if so, whether the General Assembly has authority under the constitution to establish such a court in the city of Atlanta. In other words, can there be two city courts in the city of Atlanta? The city court of Atlanta and the city court of Savannah are expressly named in the constitution. The courts so named are, of course, the courts that were in existence in those cities when the constitution was adopted. The constitution recognized these courts as existing courts, and gave this court jurisdiction to review judgments rendered by them. There is nothing in the constitution expressly authorizing the General Assembly to create other courts of like character to the city

courts of Atlanta and Savannah in either of these two cities. The constitution expressly limits the authority of the legislature in the matter of the creation of such courts to the establishment of the same in "other cities," that is, cities other than Atlanta and Savannah. There is nothing in the constitution from which a power in the General Assembly to create additional courts of this character in Atlanta and Savannah can be legitimately implied. On the other hand, the language of the constitution would require a construction that it was the intention of the framers of that instrument that there should not be at one time more than one city court either in Atlanta or Savannah. The provisions of the constitution in reference to the city court of Atlanta and the city court of Savannah, it seems to us, can not lead to any other conclusion than that above stated. It is said, however, that such a construction would lead to the conclusion that the General Assembly might establish two or more city courts in a mere hamlet which the General Assembly had seen proper to incorporate into a city, and that the more important cities of Atlanta and Savannah would be limited, notwithstanding their urgent needs for other courts, to one city court. What is or is not a city is a question, as has been ruled, to be determined solely by the General Assembly. What are the needs of the different localities of the State, as to the establishment of courts, for the trial of cases not within the exclusive jurisdiction of other courts, is also to be determined by the General Assembly. If the words of the constitution do authorize the General Assembly to establish numerous city courts, the decisions of all being reviewable by the Supreme Court on writ of error, in the different hamlets or villages of this State which have been, in the exercise of the judgment and discretion of the General Assembly, declared to be cities, and it has no power to establish more than one city court in either of the more important cities of Atlanta or Savannah, then the constitution of course must be obeyed, and the action of the General Assembly thereunder must be upheld, notwithstanding the apparent or real incongruity in reference to the matter of courts thus brought about by the General Assembly in the exercise of its constitutional powers. But does the constitution authorize the establishment of two or more city courts in any city of this State? At no time prior to the adoption of the constitution of 1865 was there in existence at the same time in the same city two or more city

courts.  From 1865 until 1877 there was never more than one city court existing at the same time in a given city.  There never was in Augusta or Savannah or Atlanta, prior to 1877, more than one city court.  The constitution must be interpreted in the light of this fact.  It recognized the right of the General Assembly to create a city court in any city in this State.  It did not in terms authorize the creation of more than one city court in a city, and, construing the words of the constitution in the light of antecedent history, it must be held that the existence of two or more city courts at one time within any city was not within the contemplation of the framers of the constitution.

If it be conceded that we are correct in the conclusion that the constitution would not authorize the creation of more than one city court in either Atlanta or Savannah, it strengthens the conclusion reached, that the authority does not exist to create more than one city court in other cities of this State.  Certainly it was not the intention of the framers of the constitution to place the cities of Atlanta and Savannah, which were expressly named by that instrument, in reference to the matter of the existence of city courts, in a worse position than other cities of like importance, or other cities of far less importance than those named.  The fact that the authority to create two city courts in the cities of Atlanta and Savannah can not be found to exist in the constitution would be a sufficient reason for resolving any doubt that might exist as to the right of the General Assembly to create two or more of these courts in less important cities against the existence of such authority.  It was said in the argument that the constitution refers to "the city courts of Atlanta and Savannah," and not the city court of Atlanta and the city court of Savannah, and from this it is argued that the constitution authorized the establishment of more than one of such courts in either of those places.  We do not think the use of the plural term " city courts " authorizes the inference drawn by counsel from the same.  The plural was used evidently for the purpose of preventing a repetition of the term " city court" in the paragraph from which the above quotation is made, and to so construe this paragraph as to make it mean that the constitution refers to a system of city courts in Atlanta and Savannah would, to say the least of it, be a slightly strained construction.  The General Assembly having no authority to establish two city courts in

the city of Atlanta, the act of 1891, creating the criminal court of Atlanta, will not be construed as one creating a city court. The criminal court of Atlanta was not by the act of 1891 established in the city of Atlanta, but in the "county of Fulton" (Acts 1890–91, vol. 2, p. 935); but in 1898 the act of 1891 was amended by an act with the following title: "An act to amend the act of September 6, 1891, and the acts amendatory thereof, establishing the criminal court of Atlanta, by providing for the election of the judge and solicitor thereof by the people of Fulton county, and for other purposes." In the body of this act it was provided "that the criminal court of Atlanta be established in the city of·Atlanta." Acts 1898, pp. 297–8. While the matter of the location of the court was not referred to expressly in the title, under the principle of the ruling made in the case of *Mayor* v. *Hughes*, 110 *Ga.* 795, that clause of the act which located the criminal court in the city of Atlanta was sufficiently indicated by the use of the words " for other purposes," the title to the act clearly showing that it was an act to amend the act creating that court; and under the principle of the case cited, the amendments to be made were not limited to the particular purpose expressed in the title, where the words "and for other purposes" are used. The criminal court of Atlanta not being a city court within the meaning of that term as used in the constitution, the General Assembly had authority to prescribe the number of persons who should· compose juries in that court for the trial of criminal cases, provided the jury should not consist of less than five persons. Hence it follows that that provision in the act declaring that the jury should be composed of five persons is constitutional and valid. While the court is not a city court, it is a valid statutory court with jurisdiction to try the class of cases referred to in the act establishing it, and in the manner prescribed in that act, before juries composed of the number of persons therein set forth. It follows from the foregoing that so much of the act creating the criminal court of Atlanta as provides for a writ of error to the Supreme Court in cases tried therein is unconstitutional and void, and the writ of error in the case under consideration from that court must be dismissed. It is unnecessary to determine at this time whether an act creating a court and conferring upon it jurisdiction only in criminal cases creates a "like" court either to the city court of Atlanta or the city court of Savannah, within the meaning of the constitution.

5. In the 17th and 18th sections of the act creating the criminal court of Atlanta it is provided that the judge of the city court of Atlanta may preside in the criminal court, and that the judge of the criminal court may preside in the city court, whenever agreed upon by the two judges, or whenever the judge of the city court is disqualified; and that whenever in the opinion of the judge of the city court it is necessary for the prompt dispatch of business for the court to sit in two divisions, both judges may try cases in the city court at the same time, and to this end the judge of the city court is authorized to draw jurors for the two divisions; and that when the court is sitting in two divisions, the division presided over by the judge of the criminal court shall be styled the city court of Atlanta, second division, and the division presided over by the judge of the city court shall be styled the city court of Atlanta.    Is the title to the act of 1891 sufficiently broad to comprehend the provisions of the two sections just referred to?    The title clearly indicates that it was the intention of the General Assembly to establish the criminal court of Atlanta.    This is the general purpose of the act.    The title to an act need not contain a synopsis of all of its provisions.    Any legislation which is germane to the general purpose of the act as indicated in the title can be properly embraced in the act, and, no matter what may be its details, the legislation embraced therein will not render the act subject to the objection that it contains matter variant from the title, so long as such matter is legitimately within the general scope of the purpose of the act as indicated in the title.    It is of course within the scope of an act establishing a court to provide that there shall be a judge of that court, and to declare how such judge may be appointed, and what shall be his jurisdiction, powers, etc., and also to provide who may preside in the place of such judge when he is disqualified or is absent, or for any other reason is not presiding.    No one will question the right of the General Assembly, under a title providing for the establishment of a criminal court, to provide for the appointment of a judge of such court and to determine what shall be his powers in reference to cases pending in that court, and also to provide that under certain conditions that court may be held by a judge of another court of this State, when there is nothing in the constitution prohibiting the General Assembly from imposing upon such other judge this duty.    It is said, however, that it is not ger-

mane to an act creating a criminal court to provide that the judge
of that court may preside in another court to try civil cases therein;
that while everything necessary to the efficiency of the criminal
court may be provided for in the act establishing the same, the
vesting in the judge of such court the authority to try civil cases
in another court is entirely foreign to the purpose indicated in the
title, which provides only for the establishment of a criminal court.
For the present we will deal with the title to this act as if it had
no reference whatever to the city court of Atlanta, and as if the
title was in these words simply : " An act to establish the criminal
court of Atlanta, and for other purposes." Under such a title the
General Assembly can create the office of judge of the criminal
court of Atlanta; and if it has authority to create this office, why
has it not in the same act authority to determine what shall be the
scope of the powers of the officer in a judicial capacity ? The
right to confer upon the judge of the criminal court of Atlanta
power to preside in the city court, while not very closely related
to the subject of establishing a criminal court in Atlanta, is not
entirely foreign thereto. Is it so foreign that this court should de-
clare so much of the act as confers this right upon the judge of the
criminal court unconstitutional for the reason that to that extent
the act is variant from the purpose expressed in the title ?

In *Churchill* v. *Walker*, 68 *Ga.* 681, 686, it was held that under
an act entitled "an act creating commissioners for the county of
McIntosh, to define their powers, duties, etc., and for other purposes,"
it was germane to the general purpose indicated in the title to em-
brace in the act a provision conferring upon these commissioners "the
exercise of the corporate authority of Darien." In *Peed* v. *McCrary*,
94 *Ga.* 487, it was held that under an act entitled an act "to amend
the county court laws as regards Taylor county, and to provide for
the appointment of a county solicitor for said county, and for other
purposes," it was competent for the General Assembly to provide that
the judge of the county court of Taylor county shall discharge all
the duties that formerly devolved on the justices of the inferior
court as to county business. In *Hope* v. *Mayor*, 72 *Ga.* 246, it
was held that under an act the title to which was to incorporate a
named railroad, and for other purposes therewith connected, it
was competent to provide that any corporate town or city of this
State, interested in the construction of such road, might subscribe to

the capital stock of the company by an election to be held for that purpose, and that the subscription of a named city to the stock of another named road was legalized and confirmed as a subscription to the stock of the road incorporated by the act.    In *Black* v. *Cohen,* 52 *Ga.* 621, 625, it was held that under a title "to authorize the Mayor and Council of the City of Rome to subscribe not exceeding $100,000.00 to stock in the Memphis Branch Railroad upon certain conditions, and for other. purposes," a provision in the act authorizing the City of Rome to subscribe to the stock in any other railroad which might be projected which has its terminus in that city, upon certain conditions, was not invalid for the reason that it related to matter not expressed in the title.    See also, in this connection, *Mayor* v. *Hughes,* 110 *Ga.* 795, and cases cited; *Hart* v. *State,* 113 *Ga.* 940.    The cases above cited show that great latitude has been left to the General Assembly in determining what is germane to the general purpose indicated in a title to an act. More than one of the cases permit this latitude to such an extent that matters contained in the act which are related only remotely to the general purpose of the act as indicated in the title are held to be germane to that purpose to such an extent as not to make the provision in question subject to the objection that it was so variant from what is expressed in the title that the General Assembly had no right to include the same in the act.    While none of the cases deal with the exact question involved in the present case, the principle at the foundation of all the rulings seems to be that the duty devolves upon the General Assembly primarily to determine what is embraced within the scope of the title to an act, and that the courts will not disturb the judgment of the General Assembly on this subject, unless it appears beyond all reasonable doubt that the matter embraced in the act which is attacked as being improperly embodied therein is entirely foreign to the general purpose and scope of the legislation indicated by the language of the title.    In other words, if after a careful investigation of the subject by the courts the judicial mind is left in a state of uncertainty and unrest as to whether the matter of legislation under investigation is germane to the general scope of the act as indicated by the title, this condition of the judicial mind is not only sufficient to authorize but to imperatively demand that the act should be permitted to stand as enacted by the General Assembly.

Chief Justice Marshall said that, before an act of the lawmaking power should be set aside as unconstitutional, "the opposition between the law and the constitution should be such that the judge feels a clear and strong conviction of their incompatibility with each other." Fletcher v. Peck, 6 Cranch, 128. This language was quoted approvingly by Judge Lumpkin in *Carey* v. *Giles,* 9 *Ga.* 258. In *Boston* v. *Cummins,* 16 *Ga.* 105, Judge Lumpkin says that the authority of the courts to declare an act of the General Assembly void will never be resorted to except in a case "which requires no nice critical acumen to decide on its character, but which is as obvious to the comprehension of any person as an axiomatic truth; as, that all the parts are equal to the whole, or that two and two make four." In *Turman* v. *Cargill,* 54 *Ga.* 664, Judge Jackson says that before an act should be declared unconstitutional the courts should be "clearly satisfied" of its unconstitutionality. In *Wellborn* v. *Estes,* 70 *Ga.* 390, Mr. Justice Hall says that the conflict "must be clear and palpable." And the same Justice in *Howell* v. *State,* 71 *Ga.* 225, says that the unconstitutionality of the law must be "plain and obvious." In *Hope* v. *Mayor,* 72 *Ga.* 246, Mr. Justice Blandford says that the conflict between the law and the constitution must be "plain and unmistakable." In *Heard* v. *State,* 113 *Ga.* 447, Mr. Presiding Justice Lumpkin says, "Mere doubt as to the constitutionality of a particular enactment settles its validity." The foregoing are only a few of the many expressions which might be found in cases dealing with the subject of what is the duty of a court in reference to allowing acts of the legislature to stand when there is doubt in the mind of the court as to the validity of the legislation. The right of the judge of the criminal court of Atlanta to preside in the city court and try civil cases is not so utterly foreign to the general purpose indicated by the title of the act as that we feel justified in declaring that the General Assembly had no right to embody the same in the act providing for the establishment of the criminal court. At best the question as to whether the legislation on this subject contained in the act is germane to the main purpose of the act as indicated in the title is not free from doubt, and this doubt is more than a mere doubt — it is a reasonable doubt. This being true, it becomes our duty to resolve this doubt in favor of the validity of the legislation.

What has been said above has been on the supposition that the

title to the act under consideration was simply to establish the criminal court and for other purposes. The title, however, contains more than this. It is an act to establish the criminal court of Atlanta "and in pursuance thereof to amend an act establishing city court of Atlanta, passed December 15, 1871, and acts amendatory thereof, and for other purposes." The title as a whole indicates a purpose, not only to create a criminal court, but to establish a criminal court in the creation of which the acts relating to the city court of Atlanta will be affected. This title certainly gave to the General Assembly the authority to place within the act anything affecting the act creating the city court and the various acts amendatory thereof which was germane to the establishment of the criminal court. So that, whether the provisions in the body of the act withdrawing criminal jurisdiction from the city court and allowing the judge of the criminal court to preside in the city court are germane either to the main purpose expressed in the title, which was to establish a criminal court, or germane to the collateral purpose, which was to amend the act creating the city court and acts amendatory thereof, the provisions in question are not so subject to the objection that they contain matter different from what is expressed in the title that we can feel that we are authorized to hold the same invalid.

6. It is said that the act of 1891, establishing the criminal court of Atlanta, is subject to the objection that it refers to more than one subject-matter, that is, the establishment of a criminal court and the amendment of the acts establishing the city court, the latter acts being amended to the extent that all criminal jurisdiction is withdrawn from the city court, and the judge of the criminal court is allowed to preside in the city court. The title to the act indicating that the general purpose of the act was to establish a criminal court, it was competent for the General Assembly to declare what should be the jurisdiction of that court, and, if it was necessary in order to effectually accomplish this general purpose, it was germane to this general purpose to withdraw jurisdiction from another court in order that the same might be vested in the new court created by the act. It was germane to the general purpose of the act not only to declare what cases should be within the jurisdiction of the court established, but also, to make the court accomplish the purpose for which it was intended, that is, a court

for the trial of criminal cases of a given character and within a given territory, to provide that another court, which was also the mere creature of statute, should be deprived of the right to try the cases which the General Assembly intended should be disposed of by the new court. If it was germane to the general purpose of the act to take away criminal jurisdiction from the city court, and was also germane to that purpose, as we have endeavored to show, to provide that the judge of the criminal court might preside in the city court, then of course the act did not relate to two subject-matters, there being only one general subject-matter in the act, that is, the creation of a criminal court, the fixing of its jurisdiction and powers, and prescribing the authority of its judge as a judicial officer of the State. In any event it can be said that the question as to whether the act refers to more than one subject-matter, like the question as to whether it contains matter different from what was expressed in the title, is not free from doubt; and for the reasons stated above, in dealing with the question as to whether the act contains matter at variance with what is expressed in the title, we must resolve this doubt in favor of the validity of the legislation and uphold the same. See *Allen* v. *Tison*, 50 *Ga.* 374; *Churchill* v. *Walker*, 68 *Ga.* 681; Payne v. Mahon, 44 N. J. L. 213; Morris v. Insurance Co., 85 Va. 588.

7. The next question to be considered is whether that portion of the act establishing the criminal court of Atlanta which withdraws criminal jurisdiction from the city court is subject to the objection that it violates that provision of the constitution (Civil Code, § 5779) which declares that no law or section of the code shall be amended or repealed by mere reference to its title or to the number of the section of the code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made. In the title to the act which established the criminal court of Atlanta the act establishing the city court of Atlanta is expressly referred to, and the date of the approval of the act is given. Section XV of the act provides "that the jurisdiction given the city court of Atlanta by the act of December 15, 1871, and the act amendatory thereof, to try all offenses less than felony, be, and the same is, hereby withdrawn, and said jurisdiction is conferred on the criminal court of Atlanta." We do not think this section is subject to the objection that it is either an amendment

or repeal of any part of the act creating the city court of Atlanta by a mere reference to its title. The act is referred to, not by its title, but by the purpose accomplished by the passage of the act, that is, the establishment of the city court of Atlanta, and the date of the approval of the act is given, not only in the title of the act establishing the criminal court, but also in its body. What the act refers to and the date of its approval are clearly stated, and there can be no doubt as to what act is intended to be amended, unless it should be shown that there were approved on the same day two acts providing for the establishment of the city court of Atlanta. All that the constitution requires is that the act amended or repealed should be identified in some other way than by a mere reference to its title; and we think that this provision of the constitution has been substantially complied with in the present case. See *Gilbert* v. *Georgia Railroad Co.*, 104 *Ga.* 415, and cases cited.

8. It being settled that there is nothing in the act establishing the criminal court of Atlanta which makes the same, or any part thereof, invalid as being in opposition to the provisions of the constitution referred to in the foregoing discussion, the only remaining question to be determined is whether the General Assembly had a right to provide that the city court of Atlanta might sit in two divisions at the same time for the trial and disposition of business pending in that court, one division being presided over by the judge of the city court and the other by the judge of the criminal court. In other words, can the judge of the criminal court preside in the city court at the same time that the judge of the city court is presiding therein, each division trying and disposing of different cases before different juries. There can be only one city court in Atlanta. There is nothing in the constitution prescribing the qualifications for a judge of the city court; nor is there anything in the constitution prohibiting the General Assembly from conferring upon the judge of another court authority to preside in the city court, nor from declaring who shall be authorized to preside therein when the judge of the city court is disqualified, is absent, or for any other reason is unable to dispose of the business pending in that court. The city court of Atlanta is a creature of statute, and the disposition of cases pending therein is left by the constitution exclusively within the control of the General Assembly, and who shall preside therein as judge under any contingency that may arise,

which would prevent the judge of the city court from disposing of the business pending in that court, is a matter with which the General Assembly is at perfect liberty to deal. The General Assembly can provide that the city court may be held by a person other than the judge of that court under given circumstances, and, whenever this contingency arises, the person so designated by law as the presiding judge of the city court of Atlanta is, for the time being, the judge of that court, with all the powers of the regular judge, and the court presided over by him is, to all intents and purposes, so far as the cases disposed of by him are concerned, the city court of Atlanta. This is undoubtedly true in reference to cases disposed of by such other judge when the judge of the city court of Atlanta is not presiding. Does it make any material difference in regard to the powers of the other judge that both are presiding at the same time in different rooms, dealing with separate and distinct cases? If the General Assembly has the power, as we think it has, to provide that the city court of Atlanta may be held by another judicial officer of this State than the regular judge, there is nothing in the constitution which expressly or by necessary implication takes away from the General Assembly authority to provide that the business of a city court may be so arranged that two judges may preside therein at the same time in different cases, each having complete authority and control over the cases pending before him, and each being, so far as such cases are concerned, the judge of the city court. The city court is in session at all times when either or both of such judges are trying cases, and for all purposes such tribunal must be treated as to both of its branches as the city court of Atlanta referred to in the constitution of the State. Under this view of the matter, a case tried before the judge of the criminal court of Atlanta while presiding in the city court of Atlanta is tried in the city court of Atlanta, and such judge has a right to correct any errors that he may make in the trial of the same, on motion for new trial; and rulings made by him are subject to review by this court on writ of error, just as if the case had been tried before the regular judge of the city court.

We think the conclusion above stated is not only authorized but required by the decision in the case of *Bone* v. *State*, 86 *Ga.* 108 (2), 115. In that case an act of the General Assembly, which provided that in counties of a given population two or more judges of

the superior court might preside in banc, or that such courts might be held in two or more section at the same time by different judges, in separate rooms in the court-house, or at the county-site, as may be convenient, was held to be a valid and constitutional law, and that the trial, under this law, of a person charged with murder, in a division of the superior court of Fulton county presided over by the judge of another circuit, was legal and valid, notwithstanding the fact that at the time of such trial the judge of the Atlanta circuit was presiding over the superior court of Fulton county and engaged in the trial of civil business. While under the constitution there could be only one judge of the Atlanta circuit, any judge of the superior court in Georgia is authorized to preside in and hold the superior court of Fulton county, and it was competent for the General Assembly to provide that if the business of the superior courts of counties of the class to which Fulton county belonged was such that the judge of the circuit could not properly dispose of the same, the court could be separated into divisions for the disposition of this business, the divisions to be presided over by judges of the superior courts of this State who were competent to preside in any superior court of the State. This seems to be the reasoning upon which the decision is founded, and this reasoning supports the conclusion which we have reached in regard to the city court. The superior court, of course, can not be held, except in cases where the judge is disqualified, by any other person than a judge of the superior court. The city court of Atlanta may be held by any judge designated for that purpose by the General Assembly. In the case of the superior court, the judge who can hold the court is designated by the constitution. In the case of the city court, who may hold that court and preside as judge therein is left to the determination of the General Assembly. In either case, if the business of the court is of such a character as that, in the judgment of the General Assembly, the court should be permitted to sit in two or more divisions, there seems to be no good reason why the General Assembly should not provide for as many divisions as the business of the court demands, and, in the case of the superior court, for as many divisions as judges of the superior court can be obtained to hold, and, in the case of the city court, in as many divisions as the General Assembly shall see proper to designate persons to act as judge of the city court. The principle of the *Bone*

case is directly controlling on the matter now under consideration. That case was concurred in by a full bench of three Justices. It has been recognized as law of this State for more than eleven years. Under the authority of that decision hundreds of citizens of this State have been deprived of their liberty, many have been deprived of their lives, and property rights have vested under judgments rendered in courts held under authority of the same, and at this time we have no disposition either to attack or to criticise the soundness of the ruling. The General Assembly in providing for two divisions of the city court of Atlanta undoubtedly had in mind the ruling in the *Bone* case; and the second division of the city court of Atlanta, organized under the act of 1891, has been recognized as a court for more than ten years, and property rights have vested under judgments rendered in the second division of that court. In view of this fact, in connection with the fact that the General Assembly was, as said above, evidently controlled in establishing this court by the ruling made in the *Bone* case, we do not feel at liberty at this time to hold that the General Assembly had no authority to provide for a second division of the city court of Atlanta.

9. It follows from what has been said above, that the writ of error from the criminal court of Atlanta must be dismissed; that this court has jurisdiction to review the judgments rendered by the city court of Savannah and by the city court of Atlanta, whether the latter court is presided over by the judge of the criminal court of Atlanta or by the judge of the city court, and therefore jurisdiction is taken in all cases from that court, without reference to whether they were tried in the city court of Atlanta or in the second division of the city court of Atlanta; and that this court has jurisdiction to review the decisions of those city courts in the State which have been established at county-sites which were cities when the acts under which the city courts were established were enacted, provided such act prescribes a jury of twelve upon demand of either party, and provided such court has both civil and criminal jurisdiction either over the limits of the city in which the court is located, or over the entire county, or criminal jurisdiction over the city and civil jurisdiction over the county, or civil jurisdiction over the city and criminal jurisdiction over the entire county. In cases pending in this court from all of such city courts jurisdiction will be taken to determine the questions raised on writs of error therefrom.

*Writ of error dismissed. All concur, except Little, J., absent.*